## Davies Estate

Before McKenna, A.J., Zavarella, Boyle and Rahauser, JJ.

OPINION BY ZAVARELLA, J., FEBRUARY 10, 1977:

A petition for the appointment of a guardian of the estate of Maglona C. Davies, an alleged incompetent, has been presented and is now for adjudication, an answer having been filed denying the need for a guardian. The petition was presented by Margaret E. Burns, a daughter of the alleged incompetent's cousin. Margaret O. White, a cousin of the alleged incompetent also joined in the petition. Charles A. Davies, Hannah Trew, Myfanwy Kimicata, and Percy Schauerhammer, cousins of the alleged incompetent, oppose the appointment of a guardian. There are no other parties in interest. The basis for the opposition is not that Maglona Davies is capable of handling her own affairs, but is that her affairs have been handled for years by her long-time friend, Beatrice

Hurley, in a very capable manner. If there is to be a guardian appointed, and the cousins do not agree to this, they would prefer the appointment of Miss Hurley. Thus the question is presented. Should a guardian be appointed for the estate of Maglona Davies?

A person is incompetent when that person is unable to manage his property, or is liable to dissipate it or become the victim of designing persons; or lacks sufficient capacity to make or communicate responsible decisions concerning his person. As to the infirmities of respondent, there is no doubt that she does not have the capacity to manage her property and is likely to dissipate the property or become the victim of designing persons. Likewise she cannot make decisions concerning her person. Robert Bowman, M.D., a highly qualified and respected psychiatrist, testified that he examined respondent pursuant to court order and after examination, found her to be as follows: ***

Cross-examination of Dr. Bowman did not detract from what is overwhelming evidence of lack of capacity of respondent. This conclusion is not, however, seriously questioned by the cousins objecting to the appointment, but instead they raise the important question in this matter, that is, an attack on the bringing of the petition itself and the need for it. As to this, the evidence indicates that for many years respondent was a client of counsel representing the now petitioner. Some months before the presentation of the petition, counsel informed the cousins by letter that he was concerned about respondent's ability to manage her personal affairs and suggested that, as respondent's counsel, he felt it was his duty to recommend the appointment of a guardian for her estate. He requested one of the cousins to sign a petition seeking the appointment. This letter was given to counsel now representing the cousins and respondent and was answered to the effect that all parties, with the apparent exception of petitioner, were satisfied that the affairs of respondent were being handled capably. Because of this, it is suggested that petitioner and her counsel did not bring the petition in good faith nor in the best interest of respondent, but on the contrary, was instituted to aid the proposed guardian or counsel. This suggestion or contention is being dismissed but not without care-

ful thought for a court should not interfere into affairs over which it has no concern. I do not, however, believe this to be the case in the instant matter. This matter is a concern for the court.

As to the bringing of the petition, in *Riley, Incompetent,* 7 FIDUC. REP. 359, Judge Klein, then President Judge of the Orphans' Court of Philadelphia County, stated that it was not only proper for a lawyer to be concerned for the welfare of his client and the safeguarding of his property, but it was in keeping with the oath administered to lawyers to file a petition for the appointment of a guardian to protect his client's interests. In *Riley,* supra, the respondent was removed from a Philadelphia hospital by an alleged daughter to her home in New Jersey at a time when the attorney was advised by respondent's physician that respondent was confused, irrational, and psychotic. The attorney later received a letter allegedly prepared by his client requesting the return of certain bank books and the client's will. The matter was then called to the attention of Judge Klein and he suggested the presentation of a petition for a citation to show cause why Mr. Riley should not be adjudged incompetent. The filing of the petition was approved and certainly from reading *Riley, supra,* it does not appear that Judge Klein even remotely felt that counsel was bringing the petition for counsel's own benefit. What is of note, however, in *Riley,* is that the respondent, who did testify, and *all* of his relatives or other persons who had an interest in his estate requested that respondent should not be adjudged an incompetent and that a guardian should not be appointed for his estate. Under these circumstances, Judge Klein was of the opinion that he should dismiss the petition as the interest of the respondent appeared to be reasonably well-protected for the time being, all interested persons having been alerted to the situation.

This then is the next contention or position of the cousins, that is, the petition should be dismissed since there is no evidence that anyone is dissipating respondent's estate, but on the contrary, it appears that respondent's interests are reasonably well-protected. If respondent could testify or if there was any indication that she was competent, greater weight would be given to this contention. Given, however, respondent's present

mental condition the request of her intestate heirs to allow the matter to remain as is is denied. In a concurring opinion in *Mulligan Est.*, 19 FIDUC. REP. 309, at 317, Judge Klein in answering a request to dismiss an incompetency proceeding because of the death of petitioner stated:

> "I am strongly of the opinion that when a petition is filed to adjudicate incompetency by a person having a legitimate interest in the matter and a citation issues, which is properly served upon the alleged incompetent, he becomes a ward of this court and thereupon it becomes our duty and responsibility to protect him from the world, his family and himself.
>
> "In dealing with the estate of an incompetent the paramount consideration is his interest and the court pays no regard to the interests or expectations of those who may come after. See Bispham's Principles of Equity (7th Ed.), p. 732. *Mulligan Estates*, supra, p. 318.
>
> "*Hughes v. Jones*, 116 N.Y. 67: 'The primary object of the proceedings is not to benefit any particular individual, but to see whether the fact of mental incapacity exists, so that the public, through the courts, can take control'."

Furthermore, an alleged incompetent is a ward of the orphans' court and is entitled to our fullest protection. If a respondent is incompetent, a hearing judge should take appropriate steps to protect the respondent's interests: *Mulligan Estate*, supra, pp. 319-320. Also in *Arthur's Case*, 136 Pa. Super. 261 wherein it was contended that the appointment of a guardian was unwarranted as there were no specific instances shown where appellant had in the past dissipated his property or been victimized by designing persons, the court indicated it was precisely for the purpose of preventing and forestalling any such instances that the Incompetents' Acts were passed. They were passed with the intention that they operate prospectively in order to protect a weak-minded person against his own improvidence thereafter. Also, *Myers Est.*, 395 Pa. 459.

It is not shown or even suggested that Miss Hurley in any way would take advantage of the weakness of respondent, nor that she would do with respondent's property as Miss Hurley would, and furthermore, it has not been shown that she would not be a proper guardian of the estate, but nevertheless as in *Arthur's Case*, courts should not be bound to confine the selection of a guardian from those recommended by the parties to the proceedings. Suggestions relative to whom the parties de-

sire as guardians are helpful and should be considered, but to hold that suggestions are binding upon the court in all cases would be to remove the duty of appointment, with its attendant responsibility, from the court, where the statute imposes it, and entrust it to the petitioner or other parties in these matters. The appointment of a guardian for an incompetent is within the sound discretion of the court to which the application has been made (*Heidtman Est.*, 452 Pa. 441), and a review of this matter convinces me that it is in the best interest of Maglona Davies that a corporate fiduciary be appointed guardian. Corporate records are indefinite, individual life and records are not. Corporate fiduciaries are ageless, individuals are not. Mellon National Bank, N. A., has agreed to act as guardian and there is no shown reason why the appointment should not be made. Given, however, the facts of this particular case, it is suggested that the guardian engage the services of both counsel in this matter or they should agree to work together to protect the interests of respondent, which should be their primary concern, and at the same time represent their respective individual clients. Likewise because of the dedicated services and friendship of Miss Hurley to Miss Davies, there is no reason why Miss Hurley should not be appointed guardian of the person of Miss Davies to insure that her personal needs and well-being will be adequately served. If Miss Hurley files an acceptance, she will be appointed.

One other matter deserves comment, that is, counsel for respondent objected to the testimony of Dr. Bowman as a report of his examination was not submitted in writing to the court and to the parties before the hearing. At trial it was indicated that counsel was correct when he argued that the medical report, particularly of a court-appointed physician should have been previously submitted, however, Dr. Bowman was permitted to testify with the understanding that if anything in his testimony would cause surprise or place counsel at a disadvantage by not having a report, then the matter would be continued for further medical testimony or at least to give counsel the opportunity to bring forth his own expert witness. In view, however, of Dr. Bowman's testimony and the clear evidence of incompetency, I do not believe that there was error in the trial ruling and it is affirmed at this time.

The order in the petition making the adjudication of incompetency and the appointment of a guardian of the estate will be signed in accordance with this opinion.

OPINION FOR COURT EN BANC BY RAHAUSER, J.:

This matter arises out of a contested proceeding for the appointment of a guardian for the estate of an alleged incompetent, which resulted in the appointment of Mellon Bank as guardian of the estate of Maglona C. Davies, an alleged incompetent, on February 10, 1977. Exceptions to this decree were entered on February 17, 1977. Maglona C. Davies died on March 1, 1977, before any action on the exceptions was taken by the court and before the guardian received any property of the alleged incompetent.

Counsel for the guardian has presented a petition for allowances and discharge, seeking compensation for services rendered by the guardian and its counsel.

The executor of the estate of the said alleged incompetent has filed preliminary objections to the petition for allowance and discharge on the ground that the decree appointing the guardian never became final and so the guardian has no standing to present such petition.

Orphans' Court Division Rule    , Section 9, provides, in substance, that a decree does not become final if exceptions to it are filed within ten days. Exceptions to the decree of February 10, 1977, appointing the guardian, having been filed within ten days, i.e., on February 17, 1977, *the said decree did not become final.* The death of the alleged incompetent has rendered the proceedings for the appointment of a guardian for her estate moot. The guardian never received any property of its ward and is not in a position to pay any fees or allowances.

Under such circumstances the preliminary objections will be sustained without prejudice to the rights of the guardian and its counsel to submit their claims to the executor of the decedent's estate for determination at the audit of the account of the executor.

The exceptions to the decree of February 10, 1977 will be dismissed in view of the death of the alleged incompetent.

A decree will be entered in accordance with this opinion.